Irene SEACRIST, Appellant,

v.

Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, Appellee.

No. 75–1763.

United States Court of Appeals, Fourth Circuit.

Submitted Jan. 7, 1976.

Decided April 22, 1976.

John Boettner, Jr., Charleston, W. Va., for appellant.

John A. Field, III, U. S. Atty., Frank E. Jolliffe, Asst. U. S. Atty., Charleston, W. Va., Stephanie W. Naidoff, Regional Atty., Margaret M. Hathaway, Asst. Regional Atty., U. S. Dept. of Health, Education and Welfare, Philadelphia, Pa., for appellee.

Before HAYNSWORTH, Chief Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal by Ms. Seacrist from a denial of widow's benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901, *et seq.* She contends that her husband died from pneumoconiosis (black lung) and that, as a result, she is entitled to benefits. The Secretary denied her claim, and that determination was affirmed by the district court.

■ The Secretary concedes that Ms. Seacrist qualifies as a dependent widow under the Act and that she properly filed her claim. The point of dispute is whether Mr. Seacrist's death was due to pneumoconiosis.[1] 30 U.S.C. § 921(a); 20 C.F.R. § 410.210(e)(2). The Administrative Law Judge found that "there is insufficient evidence for concluding the miner died of or suffered from pneumoconiosis or a chronic lung disease or that such a condition significantly contributed to his death from cardiac failure." The district court held that his determination rested on substantial evidence. We affirm.

### I.

The most significant evidence of cause of death is:

(1) the clinical summary made at Laird Memorial Hospital—

The patient became suddenly short of breath and deeply cyanotic while working in a mine on April 30, 1963. He was first brought home and from there to Laird Memorial Hospital where he arrived moribund and demised promptly with signs of pulmonary edema. His blood pressure before death was 220/120. During the terminal illness he has apparently not complained of chest pains. He had no history of heart or for that purpose any other disease. The clinical diagnosis was made of—Acute left heart failure;

(2) the autopsy protocol giving cause of death as "cardiac failure with secondary acute pulmonary edema;"

(3) a letter from Mr. Seacrist's personal physician—

In reviewing the autopsy report on Brant H. Seacrist, Sr. (Bryant Hamilton Seacrist, Sr.) the findings which were described in the lungs are basically those of acute pulmonary edema, secondary to heart failure. No where in the report is there mention of any anthracotic, or silicotic deposits.

The chest X-ray, which was submitted to Social Security office was made on 8/20/55, and in reviewing the film, I find no evidence of pneumoconiosis.

However, in spite of these X-ray and autopsy findings, it is my firm opinion that this man suffered from pneumoconiosis. I treated him from 1942 until the time of his death, and throughout the entire time of knowing him, he had frequent involvement related primarily to exposure to coal dust. It is unfortunate that the autopsy findings are not more specific. The negative X-ray, of course, is of no conclusive evidence of this man suffering from pneumoconiosis.

*It is my conclusion that the evidence of acute congestive failure is most likely due to right heart strain, related directly to his occupational pneumoconiosis.*

It is clear that if Ms. Seacrist is to recover, it must be under 20 C.F.R. § 410.462(b) which reads as follows:

(b) Death will be found due to a respirable disease when death is medically ascribed to a chronic dust disease, or to another chronic disease of the lung. Death will not be found due to a respirable disease where the disease reported does not suggest a reasonable possibility

---

1. On appeal Ms. Seacrist does not argue either that Mr. Seacrist was entitled to benefits at the time of his death or that he was totally disabled

due to pneumoconiosis at the time of his death. 20 C.F.R. § 410.210.

that death was due to pneumoconiosis. Where the evidence establishes that a deceased miner suffered from pneumoconiosis or a respirable disease and death may have been due to multiple causes, death will be found due to pneumoconiosis if it is not medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death.

As the district judge noted, this determination is more in the nature of medical finding than a judicial judgment. For that reason, after examining briefs by the parties, we requested answers to further questions posed by the court. We were interested in the meaning of the phrase "secondary acute pulmonary edema"—(1) whether it was "a chronic dust disease . . . or another chronic disease of the lung" within the meaning of the first sentence of § 401.-462(b), and (2) whether "secondary" as used here meant "an independent though less significant cause of death" or that pulmonary edema resulted from cardiac failure.[2]

## II.

The answers to these questions and others have been received and are in total conflict. Ms. Seacrist relies almost entirely on materials contained in Hurwitz & Koulack, Pneumoconiosis: Attorney's Textbook of Medicine, Vol. 8A, Ch. 25, ¶ 205.35(3). In response to the first inquiry, she states that "[pulmonary edema] is a lung disease which can be caused by interference with pulmonary blood circulation created by fibrosis and hyalinization induced by an irritating stimulus such as coal dust particles. Moreover, 2035(d)(ii) of the Coal Miner's Manual describes pulmonary edema as a 'cardiopulmonary disease.' " Turning to the second question, she answers: "Clearly 'secondary' used here is in the sense of an independent cause of death. Actually both

the heart failure and the pulmonary edema are the manifestations of death caused by either arteriosclerosis or fibrosis of the lungs as indicated by the autopsy report. [T]he pulmonary edema caused by the fibrosis of the lungs caused in turn by coal dust actually induced the heart failure." Appellant's Response to Questions at 9 & 12–13.

The government disagrees:

Pulmonary edema is an accumulation of fluid in the lungs, with resulting shortness of breath and congestion. It occurs most often as a complication of left ventricular failure due to heart disease. Left heart failure upsets the balance of pressures in the lungs, causing the accumulation of fluids. Pulmonary edema is not a chronic dust disease or other disease of the lung within the meaning of the Act.

"Secondary to" as used in the autopsy report, and in medical parlance generally means "resultant from" or "consequent to." The term was used to indicate that the edema resulted from the left heart failure, in turn caused by arteriosclerosis. It was not used in the sense of "independent though less significant." This is clear from the report itself and from the death certificate, both of which require contributing or noncomitant conditions to be listed. None were found. . . .

. . . . . .

Pulmonary edema is neither an independent cause of death nor a "disease" but rather the natural physiological result of left heart failure.

Appellee's Response to Questions at 2 & 7.

Thus, even after receiving responses from the parties, the conflict, which is essentially medical and factual and not legal, remains. We note that it is the responsibility of the Secretary and not the

2. We asked for answers to these questions:

8. Is pulmonary edema "a chronic dust disease or . . . another chronic disease of the lung" within the meaning of 20 C.F.R. § 410.462?

9. In terms of causation, what is the meaning of the phrase "secondary acute pul-

monary edema" as contained in the autopsy protocol?

14. Is "secondary" used here in the sense of an independent though less significant cause of death, or does it mean that the "pulmonary edema" resulted from the "cardiac failure"?

courts to reconcile inconsistencies in the medical evidence,[3] and that it is the claimant who bears the risk of nonpersuasion.[4] Accordingly, while we are unable to say that no other conclusion can be drawn from the evidence presented, we find that the Secretary's determination is supported by substantial evidence.[5]

The judgment of the district court will be AFFIRMED.

---

3.  *Oppenheim v. Finch*, 495 F.2d 396 (4th Cir. 1974).

4.  *See* 20 C.F.R. §§ 410.240 & 410.475; *cf. Flack v. Cohen*, 413 F.2d 278 (4th Cir. 1969).

5.  *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972); *Whiten v. Finch*, 437 F.2d 73 (4th Cir. 1971).