**Ernest PANNELL, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education & Welfare, Appellee.**

No. 78–1082.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1979.

Decided Feb. 7, 1980.

Joseph Wolfe, Norton, Va. (Donald E. Earls, Earls, Wolfe & Farmer, Norton, Va., on brief), for appellant.

Fred Marinucci, Dept. of Health, Ed. & Welfare, Philadelphia, Pa. (Paul R. Thomson, Jr., U. S. Atty., Morgan E. Scott, Jr., Asst. U. S. Atty., Roanoke, Va., Stephanie

W. Naidoff, Regional Atty., Joan E. Kaehne, Asst. Regional Atty., Dept. of Health, Ed. & Welfare, Philadelphia, Pa., on brief), for appellee.

Before K. K. HALL, JAMES DICKSON PHILLIPS and MURNAGHAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Ernest Pannell appeals from an order of the district court affirming a decision of the Secretary of Health, Education and Welfare that he was not entitled to "black lung" benefits sought pursuant to the regulations enacted under Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, *as amended*, 30 U.S.C. § 901, *et seq.* The district court evaluated all of the claimant's evidence and the provisions under which he might be entitled to benefits, and concluded that the Secretary's finding and decision not to award benefits were supported by "substantial evidence." 30 U.S.C. § 923(b), incorporating by reference § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). We agree with that conclusion and affirm. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In order for the claimant to be held entitled to benefits under Part B of Title IV, he must establish that he was a miner, that he has properly filed a claim for benefits, that he suffers from pneumoconiosis arising from coal mine employment, and that this disease disabled him before June 30, 1973, when jurisdiction to adjudicate claims passed to the Department of Labor. The Secretary acknowledged that Pannell was a miner and had filed a proper application, but found that he had failed to establish that he was totally disabled from pneumoconiosis on or before the jurisdictional cut-off date.

Pursuant to the Congressional directive in § 411(b) of the Act, 30 U.S.C. § 921(b), the Secretary has promulgated regulations prescribing the standards for determining whether a miner is totally disabled due to pneumoconiosis. Pannell had two alternative routes for claiming entitlement: through the interim adjudicatory rules of 20 CFR 410.490, or through the means set out in the permanent rules at 20 CFR 410.410–410.430. We shall examine the claimant's evidence under each of the applicable provisions.

Under the interim rules, a rebuttable presumption of total disability due to pneumoconiosis arises if (1) an x-ray, autopsy or biopsy establishes the existence of simple pneumoconiosis, or (2) in the case of a miner who worked ten years in underground or comparable coal mine employment, ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease. The x-ray evidence presented by this claimant consisted of nine films taken between March 5, 1971 and March 8, 1974. Six of these x-rays were found by one or more readers to be either negative for pneumoconiosis or of too poor a quality to permit interpretation. Of the remaining three, one film dated August 11, 1973 was initially interpreted as positive, category 1/1p, by an "A" reader. Upon review of the film, however, one "B" reader found that it was negative, and a second "B" reader pronounced it unreadable. An eighth film, dated August 27, 1971, was found to be unreadable by an "A" and a "B" reader, but on a rereading Dr. Navani, a "B" reader who reviewed three films at the claimant's request, interpreted the film as showing pneumoconiosis, category 1/0. The final film, dated March 8, 1974, was interpreted by an "A" reader as suggestive of pneumoconiosis, category p2/3, by a "B" reader as unreadable, and by Dr. Navani as revealing more or less the same findings as the x-ray of August 27, 1971, or positive, category 1/0. But at a deposition by the claimant's attorney on November 21, 1975, Dr. Navani stated that the August 27, 1971 x-ray showed "scattered modules of maybe Q0/1," or negative. When asked if he could find category 1/0 in the March 8, 1974 x-ray, Dr. Navani stated that he could not read the film. On April 20, 1977, when Dr. Navani was again deposed by the claimant's attorney, he was asked if "the disease process of 1/0" shown in his initial report on the

March 8, 1974 x-ray existed on or about May 1970. Dr. Navani stated that, "most probably," it did.

The claimant has the burden of proving his entitlement to the presumption under the regulations by a preponderance of the evidence. *Sharpless v. Califano*, 585 F.2d 664, 667 (4th Cir. 1978). Any conflict in the evidence is to be resolved by the Secretary, and his resolution must stand if supported by substantial evidence. *Id.; see also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976). We think the Secretary's decision that the x-rays failed to establish the presence of pneumoconiosis has substantial support, given that each film read once as positive was also read as negative or unreadable by a "B" reader, and that the evidence of Dr. Navani, upon which claimant relies, is itself in conflict.

The Secretary was also entitled to decide that Pannell had not met the criteria for establishing the presence of a chronic respiratory or pulmonary disease, which in conjunction with his long years of work in the mines would give rise to a presumption of total disability due to pneumoconiosis. The presence of such a disease may be established through ventilatory function studies performed in accordance with the regulations. Section 410.430 (20 CFR) of the regulations specifies that the studies must include a statement from the physician concerning the claimant's degree of cooperation during the test. Because ventilatory function tests measure breathing capacity, the results depend in part upon the effort and cooperation of the individual undergoing the tests. Ventilatory function studies were performed on this claimant on four occasions, and for three of the tests the results fell within the values required for entitlement. But for one such test claimant's cooperation was noted as "moderate," for a second, "poor," and on the third no notation of cooperation was made. The only test for which claimant's cooperation was "good" yielded values in excess of the maximum allowing entitlement. We think the Secretary was justified in discounting those tests not performed in accordance with the regulations and in concluding that

Pannell had therefore not met his burden under this provision.

Having failed to qualify under either part of the interim rules, Pannell must turn to the alternative means of entitlement set out in the permanent rules. One provision under these rules, at 20 CFR 410.418(a), supplies an irrebuttable presumption of total disablement due to pneumoconiosis to a miner who establishes the presence of complicated pneumoconiosis through x-rays or biopsies. Since no reader found complicated pneumoconiosis in any of Pannell's x-rays, he is clearly not entitled to the irrebuttable presumption.

Finally, we conclude that the evidence entitled the Secretary to find that the claimant had not established the rebuttable presumption of totally disabling pneumoconiosis that is available under another provision of the permanent rules, 20 CFR 410.-414(b). That subsection provides that a claimant with 15 years or more of coal mine employment is entitled to a presumption that he is totally disabled by pneumoconiosis if "other evidence" (other than x-rays, biopsy or autopsy) demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment. *See Petry v. Califano*, 577 F.2d 860, 864 (4th Cir. 1978). Though the record reflects that the claimant has some symptoms of respiratory impairment such as shortness of breath, a productive cough, and chest discomfort, the Secretary concluded that Pannell's impairment was not "totally disabling" as is necessary to establish the presumption. We find that that conclusion is supported by substantial evidence. The results of physical examinations performed on March 8, 1973 and April 22, 1974 indicated that the claimant's chest was symmetrical in contour and equal in expansion. No rales, rhonchi, or expiratory wheezes in the lungs were present. No chronic obstructive lung disease was found. Although Dr. P. P. Barongan stated in his report of April 22, 1974 his conclusion that claimant was totally disabled for any gainful employment, his physical findings do not support that conclusion. Dr. Barongan reported very minimal sup-

pression of breath sounds on both bases of the lungs, no unusual area of dullness of the lungs, and no rales or expiratory wheezes. Additionally, blood gas studies performed on June 15, 1976 revealed only a mild degree of hypoxia with no $CO_2$ retention. The claimant and his wife both testified at the hearing about his breathing difficulties, and such evidence is relevant to a determination of total disability. But upon weighing this testimony with the medical evidence, the Secretary could justifiably have found the medical evidence more persuasive. Thus after considering all of the evidence, we conclude that the Secretary's decision that Pannell failed to establish that his respiratory impairment was totally disabling was supported by substantial evidence.

Pannell has moved this court to remand his case to the Secretary for reconsideration under the Black Lung Benefits Reform Act of 1977. We deny the motion, noting that such a remand is not necessary in order for a claimant to have his record reviewed by HEW under the new standards, or by the Department of Labor under Part C of the Federal Coal Mine Health and Safety Act of 1969. Accordingly, finding that the Secretary's decision is supported by substantial evidence with respect to all of the provisions potentially applicable to Pannell, we affirm the judgment of the district court.

*AFFIRMED.*

K. K. HALL, Circuit Judge, dissenting:

I think the Secretary failed to properly analyze the evidence under the principles set forth in *Petry v. Califano*, 577 F.2d 860 (4th Cir. 1978), particularly with respect to claimant's ventilatory studies.

Pannell spent thirty-two years working in coal mines. This, of course, requires consideration of his claim under 20 C.F.R. § 410.-414(b), which creates a presumption of total disability due to pneumoconiosis "if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment," unless rebutted by evidence establishing that the miner did not have pneumoconiosis or the impairment did not arise from employment in the coal mines.

The other evidence presented in this case is substantial. Pannell and his wife testified that he can neither work nor perform household chores without breathing difficulties. He has a persistent productive cough, sleeps partially sitting up, and experiences frequent shortness of breath. The medical evidence contains both a history and objective findings of lung disease. Dr. Barongan concluded that Pannell was totally disabled, listing pneumoconiosis as a reason for the disability. And three of the four ventilatory studies performed on Pannell showed qualifying values, while the fourth was extremely close.

The Appeals Council, focusing primarily on the symmetrical contour of Pannell's chest and the absence of rales, rhonchi or expiratory wheezes during physical examination, dismissed with one broad stroke a battery of persuasive evidence of pulmonary impairment. I do not think these findings negate the existence of a disabling pulmonary impairment demonstrated by the other relevant evidence in this case.

I am compelled to protest especially the Secretary's abuse of the "cooperation" factor in evaluating pulmonary function studies. The Appeals Council rejected three ventilatory studies showing qualifying values. One of these showed "moderate" cooperation by the claimant. Another did not specify cooperation, but was apparently considered by the testing physician to be of sufficient validity to support an impression of "moderate obstructive pulmonary disease," which could be related to pneumoconiosis. One test showed qualifying values but poor cooperation.

The Secretary apparently takes the position that only studies showing "good" cooperation are valid under 20 C.F.R. § 410.430. The regulation, however, makes no such requirement. It provides, in pertinent part,

A statement shall be made as to the individual's *ability to understand* the directions, *and cooperate* in performing the tests. If the tests cannot be completed

the reason for such failure should be explained. (emphasis added)

Even if we accept the position that the Secretary is not bound to award benefits under 20 C.F.R. § 410.490(b) based on a timely study showing less than ideal cooperation, there is no justification for depriving such studies of all probative value as "other evidence," especially where the claimant's cooperation was obviously acceptable to the testing physician. This is precisely what the Secretary has done in this case, and I think our holdings in *Petry, supra*, and *Arnold v. Secretary*, 567 F.2d 258 (4th Cir. 1977) preclude this sort of disregard of highly probative evidence favorable to the claimant.

I respectfully dissent.