**James H. WHITMAN, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Sec. of Health, Education and Welfare, Appellee.**

**No. 78–1124.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1980.

Decided March 20, 1980.

Deborah Garton Gibson, Bluefield, W. Va. (Hensley, Muth & Gibson, Bluefield, W. Va., on brief), for appellant.

Mary S. Feinberg, Asst. U. S. Atty., Charleston, W. Va. (Robert B. King, U. S. Atty., Charleston, W. Va., on brief), for appellee.

Before BUTZNER and HALL, Circuit Judges, and SHIRLEY B. JONES, United States District Judge for the District of Maryland, sitting by designation.

BUTZNER, Circuit Judge:

James Whitman appeals the Secretary's denial of black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended in 1972. We reverse and remand for an award of benefits.

Whitman, who is 68 years old, testified that he worked 24 years as a miner. From 1936 to 1944 he hand-loaded coal on a pan line conveyor. From 1944 until the mine closed in 1960, he operated a cutting machine. All of his work was underground at the face of the mine. He was employed by the state highway department for the next seven and a half years and then worked intermittently as a security guard until 1973. For the past eight to ten years he has had difficulty in breathing. He has a persistent cough and congestion in his chest. He testified that his physical activity is severely restricted and that he is unable to work.

Whitman introduced two x-rays initially read by B readers. Both of the x-rays disclosed he was suffering from simple pneumoconiosis according to the standards set forth in 20 C.F.R. § 410.428. The Secre-

tary had the same films reread by B readers who reported that they were negative. Whitman then submitted positive rereadings of the films by another B reader. Pulmonary function studies showed some ventilatory impairment, but the values exceeded regulatory criteria. An x-ray and a pulmonary function study taken in 1975 satisfied the regulatory criteria for a diagnosis of pneumoconiosis.[1]

Whitman was examined by three physicians. Each reported that he had a pulmonary impairment. One of the physicians, a board certified internist who examined him in June, 1973, administered a blood gas test that produced values that did not unequivocally show disability as specified in the appendix to 20 C.F.R. § 410.490. His report included the observation that Whitman "exhibited moderate impairment in oxygen transfer and abnormal ventilatory response with exercise." He concluded that Whitman "would appear to be incapable of performing steady work beyond sedentary work levels. A numerical estimate of the overall loss of functional capacity in this case would be placed in the neighborhood of 65%." An internist, who is not board certified, employed by the Bureau of Disability Insurance, concluded that the tests administered by the examining physician "indicate no respiratory impairment." This physician's cryptic one sentence report does not disclose whether she meant impairment as determined by § 410.490, nor did it offer any explanation why her opinion differed from the examining physician's.

The administrative law judge denied Whitman's claim for benefits because (1) the x-ray evidence did not establish the presence of pneumoconiosis, (2) the pulmonary function values from the timely tests exceeded the regulatory criteria and did not demonstrate a significantly impaired lung function, and (3) the medical and other evidence did not demonstrate the presence of totally disabling pneumoconiosis or a totally disabling respiratory or pulmonary disease presumed to be pneumoconiosis.

Since Whitman filed his claim before July 1, 1973, he is entitled to benefits if he satisfies the interim criteria of 20 C.F.R. § 410.490. This regulation provides in part:

(b) With respect to a miner who files a claim for benefits before July 1, 1973, . . . such miner will be [prima facie] presumed to be totally disabled due to pneumoconiosis . . . if:

(1) One of the following medical requirements is met:

(i) A chest roentgenogram (X-ray) . . . establishes the existence of pneumoconiosis [in accordance with § 410.428].

In order to diagnose pneumoconiosis by x-rays, the Secretary has classified physicians according to their qualifications and experience as either A or B readers. The regulation specifically classifies "final or B" readers as superior to A readers. 42 C.F.R. § 37.51. The Secretary generally submits x-rays initially interpreted by A readers to B readers for rereading. Section 37.52, however, provides in part: "If the first interpretation is by a B reader, it shall be final." [2]

The administrative law judge refused to credit the positive interpretations of the two initial B readers because they differed from later interpretations of the same films by the Secretary's contract radiologists whom the administrative law judge described as C readers. The regulations, however, make no provision for C readers. The contract radiologists who reread the x-rays were actually certified as B readers in accordance with 42 C.F.R. § 37.51. The regulations do not authorize an administrative

1. The administrative law judge gave no weight to the 1975 evidence. Although this ruling is contrary to *Arnold v. Secretary of Health, Education and Welfare*, 567 F.2d 258 (4th Cir. 1977), we need not remand the case in view of our conclusion that Whitman is entitled to benefits.

2. Section 37.52 of Title 42 C.F.R., promulgated in 1973, was amended in 1978. In accordance with *Treadway v. Califano*, 584 F.2d 48 (4th Cir. 1978), we have not applied the amended version to Whitman's claim which was filed under the Coal Mine Health and Safety Act of 1969 as amended in 1972.

law judge to deny finality to B readers' initial interpretations of x-rays because he considered the contract radiologists to be C readers.

The government's brief concedes that pursuant to 42 C.F.R. § 37.52 the B readers' initial positive interpretations "could have been final." Quite properly the brief disavows reliance on the administrative law judge's reasoning about C readers. Nevertheless, the government argues, without citation of authority, that reliance on the x-rays is futile and that they prove nothing.[3]

With respect to Whitman's § 410.490(b)(1)(i) claim, we cannot accept the government's argument. It is contrary to 42 C.F.R. § 37.52. *See Stewart v. Mathews*, 412 F.Supp. 235 (W.D.Va.1975).

Moreover, quite apart from the regulations, the government's argument is predicated on an arbitrary and capricious decision. Unlike common law actions where experts appear and testify about the reasons for their opinions, radiologists simply submit their interpretations of x-rays to the administrative agency. The administrative law judge receives nothing more than conflicting opinions with no explanation why one radiologist is wrong and another is right. There is a rational basis for taking a B reader's interpretation over that of an A reader, for presumably the B reader is better qualified. *See King v. Califano*, 615 F.2d 1018 (4th Cir. 1980); *Pannell v. Califano*, 614 F.2d 391 (4th Cir. 1980); *Gober v. Matthews*, 574 F.2d 772, 775 n. 12 (3d Cir. 1978). But in the absence of expert testimony explaining the conflict, there is no rational basis for preferring one B reader's negative interpretation over another B reader's positive findings. Presumably, both B readers are equally qualified. The administrative law judge's ruling that the contract radiologist readers were more reliable than other B readers, who initially had found the same x-rays to be positive, rested solely on his subjective preference which is inadequately explained in the record. The law properly shuns such arbitrary decisions.

In accordance with 20 C.F.R. § 410.428, Whitman has proved by x-rays that were initially interpreted by B readers that he has pneumoconiosis as defined in 20 C.F.R. § 410.110(*o*)(1). The regulation making an initial B reader's interpretation final, 42 C.F.R. § 37.52, and the arbitrary rejection of the initial B readers' interpretations by the administrative law judge establish that the Secretary's decision is not supported by substantial evidence.

Pursuant to the interim criteria prescribed by 20 C.F.R. § 410.490(b)(1)(i), Whitman proved that he is prima facie presumed to be totally disabled due to pneumoconiosis. Since Whitman was employed in the mines for more than 10 years, he is entitled to the presumption of 30 U.S.C. § 921(c)(1) and 20 C.F.R. 416(a) that his pneumoconiosis arose out of such employment. There is no evidence to the contrary. The Secretary has not rebutted, in accordance with § 410.490(c), the presumption of disability created by § 410.490(b). The failure of Whitman to satisfy other interim criteria does not establish that he is able to work in coal mines or do comparable work. *Cf. Hubbard v. Califano*, 596 F.2d 623 (4th Cir. 1979); *Bozwich v. Mathews*, 558 F.2d 475, 479 (8th Cir. 1977). Furthermore, the Secretary has not introduced proof that Whitman is actually doing work comparable to coal mining.

In view of Whitman's entitlement to benefits under the interim criteria, we need not consider his claim under the permanent provisions of the Act. The case is remanded to the district court with directions to remand it to the Secretary for the payment of benefits to Whitman.

*REVERSED AND REMANDED.*

---

**3.** In *Petry v. Califano*, 577 F.2d 860, 864 (4th Cir. 1978), we held that contradictory reports of x-rays benefit neither party. *Petry*, however, is distinguishable, for it dealt with a claim, based on evidence other than x-rays, asserted in accordance with the provisions of 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 410.414(b).