935 F.2d 267
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Steven J. FRAZIER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 90-3153.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1991.
Decided June 11, 1991.
As Amended July 15, 1991.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. William M. Kidd, Senior District Judge. (CA-90-5-C-K)
 Thomas Roy Michael, Michael & Kupec, Clarksburg, W.Va., for appellant.
 Robert S. Drum, Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pa. (Argued), for appellee; Eileen Bradley, Chief Counsel, Region III, William B. Reeser, Supervisory Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pa., William A. Kolibash, United States Attorney, Lisa A. Grimes, Assistant United States Attorney, Wheeling, W.Va., on brief.
 N.D.W.Va.
 AFFIRMED.
 Before MURNAGHAN, Circuit Judge, CHAPMAN, Senior Circuit Judge, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 A social security disability claimant contends that the administrative law judge incorrectly discounted certain aspects of an examination of the claimant. The report of the examination concluded that the claimant suffered organic mental disorders which would preclude the claimant from working. We find that substantial evidence supports the administrative law judge's decision that the report's lack of corroborating details and explanation and its apparent attribution of many of the claimant's problems to hearing impairment rendered the report's conclusions inconclusive.
 
 I.
 
 2
 On June 6, 1988, Steven Frazier applied for disability insurance benefits and Supplemental Security Income. Due to a severe hearing impairment possessed since childhood, Frazier wears hearing aids in both ears. In addition, Frazier suffers from marginal mental retardation. In April 1988 he had quit his job as a janitor and laundry helper. Apparently because the working environment at the laundry was extremely noisy, Frazier could not wear his hearing aids. His resulting hearing difficulty led to harassment and tormenting from other employees.
 
 
 3
 At the request of the Social Security Administration ("Administration"), on June 20, 1988, Dr. Jo Ledwell, a licensed clinical psychologist, gave Frazier a series of psychological tests, including the Wechsler Adult Intelligence Scale-Revised, Wechsler Memory Scale, Bender Motor Gestalt Test, and Minnesota Multiphasic Personality Inventory ("MMPI"). Ledwell concluded that Frazier had borderline intelligence, no organic brain damage, and no neurological deficits. THe MMPI profile was of "questionable validity" because the "very high level of psychoticism" was not supported by the rest of the test battery and could be explained by other factors. Ledwell concluded:
 
 
 4
 The patient showed sufficient intellectual ability to follow one and two step instructions and perform routine, repetitive tasks without any particular difficulty. Ability to work without close supervision was adequate. There are no indicants that capacity to attend work on a consistent, regular basis is impaired.
 
 
 5
 In July, the Administration denied Frazier's disability insurance claims.
 
 
 6
 Frazier's attorney arranged for another examination. On January 12, 1989, Dr. Michael Franzen, an Associate Professor at West Virginia University, examined Frazier. The tests he used included the Luria Nebraska Neuropsychological Battery and the MMPI. Franzen concluded that Frazier "demonstrated a significant amount of neurobehavioral impairment. He has difficulty in memory and abstraction of skills. He also gives a history of difficulty adjusting to the work site." He concluded that Frazier's condition met one of the impairments listed at 20 C.F.R. Part 404, Subpt. P. App. 1 Sec. 12.02, Organic Mental Disorders.
 
 
 7
 On February 16, 1989, the administrative law judge (ALJ) held a hearing. The ALJ questioned Frazier and his mother. He then examined the vocational expert. The ALJ told the vocational expert to assume that Mr. Frazier has no physical limitations but that he does have the following nonexertional limitations. He has been diagnosed as suffering from borderline intellectual functioning, he cannot read or write and as shown in Dr. Leadwell's [sic] report, his Wechsler's scores are in the low 70's. He also has a significant neurobehavioral impairment, with difficulty in memory, extraction [sic--"abstraction"] skills and difficulty adjusting to the work site. He can, however, follow one and two step instructions and perform repetitive tasks. He also suffers from a sensory neural hearing loss and can hear normal conversation only with the use of proper hearing devices. However, in order to hear normal conversation, with the devices, he must avoid a work environment with moderate noise levels. He's also been diagnosed as suffering from an adjustment disorder, which apparently is related to the fact that people on the, at the work site will make fun of his hearing loss, this causes anxiety and stress for him.
 
 
 8
 The ALJ asked the expert if Frazier could perform any of his past work. The expert concluded that Frazier might be able to perform "jobs such as small parts assembly, cleaner/polisher of small products, cafeteria attending jobs and certain janitorial jobs." The expert noted, however, that if the adjustment disorder and memory problems were too severe, even these jobs would be precluded. On cross-examination, the expert stated that, assuming that Franzen's report had been an accurate assessment of Frazier, Frazier might be able to perform these jobs in a "vacuum," but might be precluded from being competitive in a normal workplace.
 
 
 9
 The ALJ concluded that Frazier was "not disabled within the meaning of the Social Security Act." The ALJ stated that the vocational expert had indicated that "such jobs might not be feasible if the claimant's memory problem and adjustment disorder were overwhelming." The ALJ, however, dismissed Franzen's conclusion that Frazier had met the listing under organic mental disorders:
 
 
 10
 This particular exhibit stands out because it is at odds with the other mental evaluations on the record. Although Dr. Franzen indicated on the Psychiatric Review Technique Form certain levels of impairment, the degree of impairment does not appear to be supported by the written report which accompanies the Psychiatric Review Technique Form. Accordingly, the Administrative Law Judge is skeptical of the indicia contained in that particular form, as it appears to be exaggerated.
 
 
 11
 The ALJ found that Frazier could perform a substantial number of jobs in the national economy.
 
 
 12
 The Appeals Council refused to review the ALJ's decision. The Council dismissed Frazier's contention that the ALJ had "rejected the only neuropsychological evaluation in the record ... 'without providing an adequate rationale in support of such rejection, and without any evidence that the evaluation is invalid.' " The Council stated that the ALJ had given "his reasons for rejecting the level of severity listed by Dr. Franzen." The Council concluded that evidence supported the ALJ's decision.
 
 
 13
 The magistrate judge who next considered the case stated that the hearing disorder and low intelligence were not disabling. He noted that "adjustment disorder and memory problems, create a close and difficult case" and that the two doctors' opinions were in "stark contrast." Nevertheless, he concluded that there was "substantial evidence" to support the ALJ's rejection of "Dr. Franzen's opinion that Frazier meets the Listings at Sec. 12.02 on the grounds that it was at odds with the other evidence and that it was not supported by the written report which accompanied it." He explained:
 
 
 14
 Dr. Franzen's report does not include evidence by history, physical exam or laboratory testing that would demonstrate a specific organic problem, which is a prerequisite to evaluating the severity of the impairment under the "A" and "B" criteria. The report does not state the actual score on the Luria-Nebraska, but rather states that Frazier showed marked impairment, not the severe impairment required by Sec. 12.02A(7). Additionally, there is no showing that this represents a loss of measured ability, Dr. Franzen stating only that this testing is more reliable at lower levels of intellectual functioning than the WAIS-R. The narrative report contains no anecdotal evidence that would support this degree of impairment and in the absence of complaints or treatment history for mental impairment, there is no support in the evidence for this opinion.
 
 
 15
 The magistrate judge added, "[a]lthough the ALJ's evaluation leaves much to be desired, I think there is substantial evidence to support his disregard of this testimony and his reliance on the VE's list of jobs based on the first hypothetical." The magistrate stated:
 
 
 16
 [o]ther than Dr. Franzen's check on the appropriate boxes on the form, there is no evidence that the plaintiff cannot perform simple, repetitive tasks in a timely manner. He completed all testing during the evaluations cooperatively and promptly. He must have been a very good worker at the laundry because he was hired back three times. Both of these factors contradict the opinion of Dr. Franzen.
 
 
 17
 He concluded, "The two psychological evaluations were conflicting in many areas and as both were non-treating consultants, neither was entitled to greater weight as a treating physician. The ALJ adequately resolved this close conflict and there is substantial evidence to support that conclusion."
 
 
 18
 The district court judge conducted a de novo review of the record and found "the Magistrate's findings and recommendations to be well reasoned, supported by the record facts, and otherwise proper." The judge granted summary judgment to the Secretary.
 
 
 19
 Frazier has appealed. Frazier argues that the ALJ should not have rejected the Franzen report merely because it differed from Ledwell's. He emphasizes that Franzen administered a different series of tests and the only neuropsychological examination. He also contends that the ALJ erred in concluding that Franzen's opinions were exaggerated because other forms supported the test results. Overall, Frazier argues that the ALJ incorrectly rejected the only neuropsychological evaluation conducted, and that additional reasons offered by the magistrate and district court to support the same result cannot permit affirmance.
 
 
 20
 The Secretary argues that substantial evidence exists to support the ALJ's conclusion that jobs existed in the national economy for Frazier. The Secretary claims that Franzen's test was not the only evidence of Frazier's mental disorders because Ledwell's Bender Gestalt evaluation demonstrated no organic brain impairment. The Secretary argues that Ledwell is a licensed clinical psychologist who supported her findings, but Franzen's qualifications are unknown and his results unsupported. The Secretary then argues in detail why Franzen's report lacks credibility: no explanation of the conclusion of a "significant amount of neurobehavioral impairment"; no actual scores revealed from the Luria-Nebraska test; the conclusion of difficulty in adjusting to the work-place based solely on statements by Frazier's mother, which, the Secretary notes, are more easily explained by Frazier's decision to leave a place where people harassed him because of his hearing disorder; and no conclusion that Frazier was severely neuropsychologically impaired as required by the regulations or that his intellectual level had declined.
 
 II.
 
 21
 Our review of the decision "is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). "Supported by substantial evidence" means " 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.' " Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966)). We can neither "make findings of fact" nor "resolve conflicts in the evidence." Id.
 
 
 22
 The Administration had to show that jobs existed in the national economy that Frazier could perform. The vocational expert's conclusions that jobs existed assumed that Frazier's problems were not as severe as seemingly indicated by Franzen's classification of organic mental disorders. The ALJ recognized that "the vocational expert did indicate ... that such jobs might not be feasible if the claimant's memory problem and adjustment disorder were overwhelming." The ALJ explained, however, that he was "skeptical of the indicia contained in that particular form [the organic mental disorders form], as it appears to be exaggerated." We examine whether substantial evidence supported the ALJ's conclusion.
 
 
 23
 The ALJ stated that the indication that "the claimant meets the Listing under Section 12.02, organic mental disorders" is "at odds with the other mental evaluations in the record." Frazier argues that the ALJ should not have dismissed Franzen's report simply because it reached a different conclusion when it was based on tests not administered by the clinical psychologist. However, Frazier misunderstands the ALJ's reasoning. The ALJ did not dismiss the report merely because it was contradicted, but rather recognized that two conflicting evaluations confronted him and that the inconsistent findings would have to be resolved. Franzen had checked boxes to indicate that Frazier suffered mental organic impairment under Sec. 12.02; Ledwell had concluded that her tests demonstrated that his "cognitive processes are not adversely affected by subjective distress such as depression or anxiety, or by schizophrenia or organic impairment." (Emphasis added). Although the tests administered were different, both reports were based on tests designed to determine brain damage and both contained findings relating to alleged mental organic impairment. See 20 C.F.R. Part 404, Subpt. P, App. 1 Sec. 12.00(D) ("Documentation").
 
 
 24
 After examining the Franzen report, the ALJ decided that it was internally inconsistent: "the degree of impairment does not appear to be supported by the written report which accompanies the Psychiatric Review Technique Form." We agree. See Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir.1976) ("it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion").
 
 
 25
 Listing Sec. 12.02, the one which Franzen found applicable to Frazier, states:
 
 
 26
 12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
 
 
 27
 The required level of severity for these disorders is met when requirements in both A and B are satisfied.
 
 
 28
 A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
 
 1. Disorientation to time and place; or
 
 29
 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
 
 
 30
 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
 
 4. Change in personality; or
 5. Disturbance in mood; or
 
 31
 6. Emotional liability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
 
 
 32
 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severity impaired range on neuropsychological testing, e.g., the Luria-Nebraska, HalsteadReitan, etc.;
 
 AND
 
 33
 B. Resulting in at least two of the following:
 
 
 34
 1. Marked restriction of activities of daily living; or
 
 
 35
 2. Marked difficulties in maintaining social functioning; or
 
 
 36
 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 37
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
 
 
 38
 20 C.F.R. Part 404, Subpt. P, App. 1 Sec. 12.02; See Backer v. Secretary of Health and Human Services, 882 F.2d 1474, 1477-78 (9th Cir.1989) (discussing Sec. 12.02).
 
 
 39
 To satisfy the "A" criteria, Franzen checked two boxes as documenting factors that evidenced the disorder: "Memory impairment" and "Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neropsychological testing, e.g., the Luria-Nebraska...." With respect to memory impairment, Franzen's written report stated:
 
 
 40
 His verbal auditory sequential memory was at a level of approximately two standard deviations below average. He could remember only five digits forward and two digits backwards. His visual spatial sequential memory was at the approximate level of an 11 year old. His immediate recall for verbal material was adequate unless there was any interfering material. When there was interfering material, his memory tended to become extremely disrupted. When there was a period of delay between the time the material was presented and the time that he was asked to recall it, there was significant delay. When new material to be learned was increased to the length of a short paragraph, his memory processes were significantly impaired.
 
 
 41
 He demonstrated significant impairment in academic skill related neuropsychological processes. He showed some problems in social intelligence. He tended to be fairly concrete and had difficulty in abstracting essential from non-essential information.
 
 
 42
 In his conclusion, he wrote that Frazier "has difficulty in memory and abstraction skills." However, on the "Mental Residual Function Capacity Assessment," Franzen concluded that Frazier's "ability to understand and remember very short and simple instructions," his "ability to carry out very short and simple instructions," his "ability to sustain an ordinary routine without special supervision," his ability to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," among other abilities were "not significantly limited." The only categories in which Franzen concluded that Frazier was "markedly limited," were in his "ability to maintain attention and concentration for extended periods," "his ability to work in coordination with or proximity to others without being distracted by them," his "ability to intereact appropriately with the general public," and his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Thus Franzen's report is somewhat ambiguous as to his conclusion that Frazier suffered persistent "memory impairment." Moreover, the actual Luria-Nebraska test results do not appear. Thus whether Frazier satisfied the "A" criteria can be debated.
 
 
 43
 Even assuming that Frazier satisfied the "A" criteria, the alleged loss of measured intellectual ability or memory impairment had to result in two of the "B" criteria. Franzen checked that Frazier suffered "Frequent" "Deficiencies of Concentration, Persistence or Pace resulting in Failure to Complete Tasks in a Timely Manner" and "Repeated" "Episodes of Deterioration or Decompensation in Work or Work-Like Settings Which Cause the Individual to Withdraw from that Situation...." But Franzen offered no explanations to support these check marks. Indeed, the only examples given by Franzen in the written report which could support the claimed "B" criteria were attributed by Franzen to Frazier's hearing impairment. Nothing in Franzen's report indicates that those problems were the result of an alleged loss of measured intellectual activity or memory impairment. Mental organic impairment unfortunately does not include people who suffer from hearing problems and intellectual limitations.
 
 
 44
 The examiners reached opposite conclusions as to the mental organic impairment classification. Franzen's determinations, however, were merely checkmarks, unsupported by any written explanations indicating that Frazier's problems were anything other than those which had plagued Frazier much of his life. In these circumstances, discounting the Franzen report and accepting the vocational expert's testimony that Frazier could perform simple, somewhat solitary, jobs was permissible. Credibility to be ascribed to which of Ledwell's or Franzen's reports was the ALJ's responsibility. The ALJ made a reasoned choice. The substantial evidence accordingly supported the ALJ's decision.
 
 
 45
 AFFIRMED.