Walter A. GOODWIN, Plaintiff,

v.

William A. HALTER,[1] Commissioner of
Social Security Administration,
Defendant.

No. Civ. 3:00CV280–H.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 6, 2001.

1. William A. Halter became Acting Commissioner of Social Security on January 20, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, William A. Halter is substituted, therefore, for Commissioner Kenneth S. Apfel as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

John F. Eichorn, Rockingham, NC, for Plaintiff.

Joseph L. Brinkley, James R. Sullivan, U.S. Atty's Office, Charlotte, NC, for Defendant.

## *MEMORANDUM AND ORDER*

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" and "Plaintiff's Memorandum ..." (both document # 9) filed December 20, 2000, and Defendant's "Motion For Summary Judgment" (document # 12) and "Memorandum in Support of the Commissioner's Decision" (document # 13), both filed March 19, 2001. The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will *deny* Plaintiff's Motion for Summary Judgment; *grant* Defendant's Motion for Summary Judgment; and *affirm* the Commissioner's decision.

## I. *PROCEDURAL HISTORY*

On October 14, 1997, the Plaintiff filed an application for disability insurance ("DI") benefits alleging disability since February 28, 1994, based primarily on "crippling arthritis, trouble breathing." (Tr. 35.) The Administration determined initially and on reconsideration that Plaintiff became disabled on August 4, 1997—his 55th birthday.[2]

Plaintiff requested a hearing—on the issue of an earlier onset of disability—which was held on October 22, 1998. On December 15, 1998, the ALJ issued an opinion that Plaintiff was not disabled at any time prior to August 4, 1997. Plaintiff filed a Request for Review of Hearing Decision on February 2, 1999. After receiving additional evidence, the Appeals Council denied his request for review on April 12, 2000, making the hearing decision the final decision of the Commissioner. The Plaintiff filed this action on June 13, 2000, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. *FACTUAL BACKGROUND*

Plaintiff testified that he was born on August 4, 1942, and was 56 years old at the time of the hearing; that he was married and lived with his wife; that he did not complete the ninth grade but could read and write; that he last worked a full-time job in February 1994 doing rudimentary surveying work for his brother's timber business which required "a lot of walking" (Tr. 114) and carrying an axe; that he stopped working full-time due to breathing difficulties and arthritis; that he had other work experience as a rough carpenter; and that he continued to do carpentry work, such as "add to some barns." (Tr. 131.)

Regarding his medical and emotional condition, Plaintiff testified that he was unable to work because of difficulty breathing, arthritis, and the after-effects of a knee operation, all of which limited, primarily, his ability to walk; that except for limitations caused by his breathing problems, he could lift "a hundred or two pound [sic] now" (Tr. 120); that he could

---

**2.** Because of Plaintiff's Residual Functional Capacity for light work, education, and lack of transferable skills, the Agency determined he was disabled at age 55 under Rule 202.22—"Advanced Age"—of the Medical–Vocational Guidelines,

lift ten pounds without difficulty; that he took aspirin for pain; that he smoked, despite his doctor's advice to stop; and that he did not see doctors regularly because he did not have medical insurance.

As to daily activities, the Plaintiff testified that he took care of his personal needs; that he could walk several blocks; that he grocery shopped and carried groceries; that he could drive for nearly two hours continuously; that he mowed the yard and did maintenance work around the house; that he visited with friends; that he was able to do laundry but did not because of his wife's concerns over mixing "whites and darks" (Tr. 133); that he could prepare meals; and that he went fishing.

The record also contains a number of representations by Plaintiff as contained in his various applications in support of his claim. On a Disability Report dated September 30, 1997, Plaintiff stated that his disabling condition was on "crippling arthritis, trouble breathing" (Tr. 35); that he had not been to a doctor since 1994 because he had no insurance; and that he drove a car.

On a Reconsideration Disability Report, dated April 23, 1998, Plaintiff stated that there were no additional restrictions on his activities.[3]

On an undated Claimant's Statement When Request For Hearing is Filed, Plaintiff stated that his condition and daily activities were unchanged and that he had not seen a doctor.

On November 11, 1997, Dr. Floyd Deen, Jr., performing a consultative evaluation for North Carolina Disability Determination Services ("NCDDS"), noted that the Plaintiff complained of a history of arthri-tis, shortness of breath, and hypertension; that he admitted to smoking one and one-half packs of cigarettes per day, and had done so for the past 40 years; that he stated he last saw a physician "several years ago";[4] that Plaintiff's hobbies included fishing; and that he occasionally attended church.

A physical examination revealed that Plaintiff was 5'7" and weighed 244 pounds; that his systolic blood pressure was slightly elevated at 150, but his dyastolic blood pressure was normal at 80; that his respiration was unlabored at rest, but he had mild to moderate bilateral wheezing on deep inspiration and expiration; that he squatted and rose with mild difficulty; that straight leg raising was positive bilaterally at 45 degrees; and that Plaintiff was tender over the lumbosacral portion of his back. Range of motion studies indicated some limitations in the thoracolumbar spine, bilateral hands, and bilateral hips, but otherwise, Plaintiff's physical examination results were within normal limits. X-rays indicated mild hyperinflation of the lungs, minimal degenerative changes in the lumbar spine at L5–S1, and mild degenerative joint disease of the first metatarsal phalangeal joint of the right foot. Spirometric testing revealed moderate airway obstruction. As a result of the examination, Dr. Deen opined that Plaintiff was able to sit, stand, move about, lift, carry, see, speak, and travel; that he could not engage in intensive physical activities and should avoid dusty and smoky environments; and that he should quit smoking.

On December 31, 1997, Robert E. Gardner, M.D., completed a Physical Residual Functional Capacity Assessment noting that Plaintiff could occasionally lift 20

---

3. Because the Plaintiff had been determined disabled and the only remaining issue was the onset date, Agency skipped many portions of these reports.

4. The record shows that prior to his November 12, 1997 consultative examination, Plaintiff had last seen a physician in October 1991, when he was treated for hemorrhoids. (Tr. 105.)

pounds and frequently lift 10 pounds; that he could sit, stand, and/or walk 6 hours in an 8 hour workday; that his ability to push and/or pull was limited in his legs; that he could stoop and crouch only occasionally; that he should avoid moderate exposure to fumes, odors, and dust; and that he had the Residual Functional Capacity to do light work.

From the Plaintiff's alleged onset date, February 28, 1994, until his 55th birthday, August 4, 1997, he did not see any medical provider. The only medical record from the relevant time period indicates that on August 30, 1994, the Plaintiff's family physician, Dr. G. Ertugral, or someone from his office, called Plaintiff's wife who said that Plaintiff was "OK." (Tr. 103.)

The ALJ considered all of the above recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes prior to August 4, 1997. It is from this determination that Plaintiff appeals.

### III. *STANDARD OF REVIEW*

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir.1992) (*per curiam*). The district court does not review a final decision of the Commissioner *de novo. Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir.1986), *quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Fourth Circuit defined "substantial evidence" thus:

Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir.1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir.1990); *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir.1982).

### IV. *DISCUSSION OF CLAIM*

The question before the ALJ was whether at any time prior to August 4, 1997, the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[5]

---

**5.** Under the Social Security Act, 42 U.S.C. § 301, *et seq.,* the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity "at any time relevant to [his] decision"; that the Plaintiff had an eighth grade education; that prior to August 4, 1997, he was in the "approaching advanced age category"; that the Plaintiff suffered arthritis and chronic obstructive pulmonary disease, which were severe impairments within the meaning of the Regulations; but that Plaintiff's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that Plaintiff was not able to perform his past relevant work; that he possessed the residual functional capacity to perform light work,[6] provided that he was allowed a sit/stand option and customary breaks and meal periods; and that applying Rule 202.11 of the Medical–Vocational Guidelines, Plaintiff was not disabled prior to August 4, 1997. (Tr. 16–17.)

The Plaintiff essentially appeals the ALJ's determination of his residual functional capacity. *See* Plaintiff's "Motion for Summary Judgment" and "Plaintiff's Memorandum ..." at 1 (both document # 9). The undersigned finds that Plaintiff's assertion of error is without merit, however, and that substantial evidence supports the ALJ's conclusions regarding the Plaintiff's residual functional capacity.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The Regulations also indicate that:

A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work.

*Id.*

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff was limited in lifting, sitting, standing, walking, carrying, pushing, pulling or other physical functions. Agency evaluators concluded that he could lift 20 pounds occasionally and 10 pounds frequently—requirements for "light" work; that his strength, grip and dexterity were normal; that he could sit, stand, and/or walk 6 hours in an 8 hour workday, and that his ability to push and/or pull was limited in his legs. Accordingly, the ALJ found that

---

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

*Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir.1995).

**6.**

"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may

be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Plaintiff was restricted to a degree commensurate with the performance of "light" work as defined in the Regulations. He imposed only the further restrictions on Plaintiff's residual functional capacity that he found to be supported by the medical records and Plaintiff's credible testimony—limiting light jobs to those that allowed a sit/stand option and customary breaks and meal periods.

At the outset, the undersigned notes that no doctor has ever concluded that the Plaintiff is disabled or told the Plaintiff not to work. To the contrary, during the relevant time period—February 28, 1994 through August 4, 1997—the Plaintiff never saw a doctor. The only progress note indicates that on August 30, 1994, the Plaintiff's wife told their family doctor, Dr. G. Ertugral, that the Plaintiff was "OK." (Tr. 103.) Indeed, prior to his November 12, 1997 consultative examination with Dr. Deen, Plaintiff had last seen a physician in October 1991, when he was treated for hemorrhoids.

▪ Rather than proving the existence of a disability, the record clearly supports the ALJ's essential conclusion: that Plaintiff suffered from—but was not disabled by—arthritis and chronic obstructive pulmonary disease. This conclusion is bolstered by the fact that Plaintiff's consultative exam was essentially normal, revealing limitations which Dr. Deen described as "mild." Further, the Plaintiff claimed his health problems prevented him from engaging in daily activities or working, but radiographic images did not reveal that Plaintiff's condition was as serious as he maintained.

Indeed, Dr. Deen noted that while the Plaintiff complained of a history of arthritis, shortness of breath, and hypertension, his blood pressure was only slightly elevated and his respiration was unlabored at rest. The Plaintiff admitted that he smoked one and one-half packs of cigarettes per day and that he had ignored his doctor's advice to stop smoking. As a result of the examination, Dr. Deen opined that Plaintiff was able to sit, stand, move about, lift, carry, see, speak, and travel; that he could not engage in intensive physical activities and should avoid dusty and smoky environments; and that he should quit smoking. Finally, the Plaintiff took only over-the-counter pain medication which was apparently effective. *See, e.g., Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir.1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), *citing Purdham v. Celebrezze,* 349 F.2d 828, 830 (4th Cir. 1965); *and Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir.1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel).

The record also establishes that Plaintiff engaged in significant daily life activities, such as taking care of all of his personal needs, doing substantial household chores and yard work—including cooking, doing laundry, mowing, and household maintenance—doing carpentry work and remodeling, driving a car, going grocery shopping, going fishing, visiting family and friends, and going to church; and that Plaintiff was able to perform basic cognitive and physical tasks. *See, e.g., Gross,* 785 F.2d at 1166; *and Mickles,* 29 F.3d at 921.

▪ In addition to the ALJ's treatment of the medical records, he properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain, and the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was *not* fully credible.

The determination of whether a person is disabled by non-exertional pain or other

symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.1996), *citing* 20 C.F.R. § 416.929(b); § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id.* at 595, *citing* 20 C.F.R. § 416.929(c)(1) *and* § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Id.* (citations omitted).

The record contains evidence of Plaintiff's arthritis and chronic obstructive pulmonary disease—conditions which *could* reasonably be expected to produce some of the pain claimed by Plaintiff—and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in *Craig*. However, the ALJ evaluated the "intensity and persistence of his pain, and the extent to which it affects his ability to work," and essentially found Plaintiff's subjective description of his limitations not credible.

■ "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles*, 29 F.3d at 921, *citing Hunter v. Sullivan*, 993 F.2d 31 (4th Cir.1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen supported ALJ's inference that claimant's pain was not as severe as he asserted). As noted above, the record before the ALJ contained substantial evidence to support a finding of inconsistency between Plaintiff's claims of inability to work and his objective ability to carry on with moderate daily activities. Specifically, Plaintiff continued to take care of all of his personal needs, do substantial household chores and yard work, do carpentry work, go fishing, drive a car, grocery shop, and visit family and friends. Further, Plaintiff failed to follow his doctor's recommendations to stop smoking.

Although the medical records in this case establish that Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir.1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working by his combination of impairments.

■ Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir.1994), *citing Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's determinations of the credibility of Plaintiff's subjective complaints of pain; his ac-

tivities of daily life; and his residual functional capacity.

### V. *ORDER*

NOW, THEREFORE, IT IS OR-DERED:

1. Plaintiff's "Motion For Summary Judgment" (document # 9) is **DENIED;** Defendant's "Motion for Summary Judgment" (document # 12) is **GRANTED;** and the Commissioner's decision is **AFFIRMED.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.