Christopher S. **PURDHAM**, Appellant,

v.

Anthony J. **CELEBREZZE**, Secretary of
Health, Education and Welfare,
Appellee.

**No. 9921.**

United States Court of Appeals
Fourth Circuit.

Argued June 3, 1965.

Decided July 2, 1965.

Bayard Z. Hochberg, Baltimore, Md.,
for appellant.

Robert J. Carson, Asst. U. S. Atty.
(Thomas J. Kenney, U. S. Atty., on
brief), for appellee.

Before HAYNSWORTH, Chief Judge,
J. SPENCER BELL, Circuit Judge, and
BARKSDALE, District Judge.

J. SPENCER BELL, Circuit Judge:

On December 18, 1961, the appellant,
Christopher S. Purdham, filed an applica-
tion with the appropriate officials of the
Social Security Administration for dis-
ability insurance benefits and a period
of disability under the Social Security
Act. 42 U.S.C.A. §§ 416(i) and 423. A
hearing on this application was held in
Baltimore, Maryland, on March 7, 1963,
before Hearing Examiner John I. Appell,
and on March 21, 1963, the examiner's
decision denying the benefits requested

by the claimant[1] was entered. Review of the examiner's decision by the Appeals Counsel was refused on June 24, 1963, whereupon the claimant instituted proceedings in the district court challenging the prior administrative determinations adverse to him. On December 30, 1964, the district court entered a memorandum order affirming the actions of the Secretary's representatives pertaining to Purdham's disability claims. This appeal followed in due course.

The claimant was born in Virginia on August 8, 1908. He completed the sixth grade in school and has received no specialized vocational training. He has held a number of jobs, all of which have involved substantial amounts of heavy labor and physical exertion. He has not been gainfully employed since July, 1959, except for a period of several weeks in September and October, 1961, when he worked as a dishwasher in a restaurant. Purdham claims that his disability dates from July 28, 1959. It has been stipulated that the claimant's insured status for disability benefit purposes extended through March 18, 1962, which apparently was the expiration date of his application for disability benefits.

Purdham's medical difficulties relates primarily to his back and his stomach. His back problems appear to date from a spinal injury suffered in 1951 while he was employed putting up and painting guard rails along the side of highways. During his hospitalization for this injury, the claimant was diagnosed as suffering from spondylosis. Several months later, during another hospitalization for back pain and strain, a back support was prescribed for Purdham. His back continued to trouble him, and on July 9, 1953, a herniated disc was removed. Less than a year later, on April 19, 1954, Purdham underwent surgery

again, and a second intervertebral disc was removed.

In 1958 the claimant had an exploratory laparotomy for a ruptured gastric ulcer. He worked sporadically thereafter until December 6, 1961, when a subtotal gastrectomy was performed. On December 18, 1961, Purdham was readmitted to the hospital because of the spontaneous opening of the gastrectomy wound. In a report dated July 10, 1962, Dr. Samuel Borssuck, the operating physician, noted that the claimant had developed a ventral hernia, and he was of the opinion that his patient "should do no lifting." In a report made shortly thereafter, Dr. Borssuck expressed a professional opinion that the patient could "only do light work not requiring [the] lifting of anything [weighing] more than a few lbs."

The Secretary does not dispute the existence of the two medically determinable impairments which have been previously discussed, nor is it contested that these impairments have resulted in definite limitations upon the type of activities in which Purdham can engage. Commenting on this point, the district judge declared: "The record before the trial examiner * * * is clear that *plaintiff cannot now engage in any substantial gainful activity* because of his back, and also because he has developed a ventral hernia following his stomach operation." (Emphasis added.) Thus it seems clear that had there not been some other factor which the district judge believed justified the denial to Purdham of the disability benefits he had claimed, the decision of the court below would have been in the claimant's favor. That other factor was the conclusion of the hearing examiner, with which the district judge agreed, that Purdham's back condition was correctible without undue risk to him, at least

---

1. The decision stated in part:
   "Giving due consideration to all the evidence of record, and in view of the foregoing, the Hearing Examiner is constrained to find that the claimant has failed to establish that from July 28, 1959, or from any other date on or before March 18, 1962, he was unable to engage in any substantial gainful activity because of any medically determinable physical or mental impairment which could be expected to result in death or to be of long-continued and indefinite duration"

to such an extent that he could engage in light work.

■ We have no quarrel with the well settled rule that a claimant who has a disabling impairment which can reasonably be classified as remediable is not entitled to receive disability benefits. Allison v. Ribicoff, 307 F.2d 379, 380 (4 Cir. 1962), cert. denied sub nom. Heath v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); Stephens v. Ribicoff, 307 F.2d 304, 305 (4 Cir. 1962); Bradey v. Ribicoff, 298 F.2d 855, 857 (4 Cir.), cert. denied, 370 U.S. 951, 82 S.Ct. 1601, 8 L.Ed.2d 817 (1962), cert. denied sub nom. Heath v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); 20 C.F.R. § 404.1502(g) (1961). However, we think that in the circumstances of this case, the hearing examiner and the district judge erroneously concluded that Purdham's disabling back condition could reasonably be regarded as remediable.

The only evidence of record regarding remediability is found in a report by Dr. John T. Fahey which is dated March 16, 1962. Dr. Fahey, who is described as a "part time specialist" in orthopedic surgery and who saw the claimant on only one occasion, recommended that Purdham be given another myelogram which (if it were negative) should be followed by an operation to fuse certain joints in his back. Dr. Fahey expressed the opinion that if the fusion were solid, Purdham would be able to return to gainful employment, at least to lighter types of work. It is to be noted that Dr. Fahey's recommendation is qualified by two crucial conditions: *if* a myelogram does not reveal the presence of disc disease and *if* the fusion is solid. Moreover, as counsel for the claimant has forcefully called to our attention, Dr. Fahey expressed no opinion whatsoever as to the likelihood that a strong fusion could be effected.

The *objective medical evidence* would tend to raise serious question as to the probability of a successful fusion. It should be remembered that as early as 1951 a diagnosis of spondylosis (a grad-

ual degeneration of the spinal bone structure) was entered on Purdham's medical records. Dr. Fahey himself indicated that the claimant had "signs and symptoms which were slightly suggestive of recurrence of discogenic disease." We think it unlikely that Dr. Fahey only inadvertently used the word "recurrence" when he really intended to refer to the "existence" of discogenic disease. In oral argument before this court, claimant's counsel recited from medical authorities some ten or eleven objective physical symptoms which the record shows are present in this case which tend to indicate that Purdham probably has some form of discogenic disease. If in fact Purdham does have discogenic disease, the whole basis of Dr. Fahey's recommendation is undermined. To deny this claimant disability benefits because he has not undergone a serious and painful operation which not only would definitely limit his ability to bend but which also had not been unequivocally declared by any medical authority as likely to strengthen his back so that he can return to work would in our judgment be an unduly harsh and restrictive interpretation of a remedial statute. Like the Sixth Circuit, we are moved to ask: "What kind of surgical operation entailing what danger to life, and pain, must an applicant undergo at the behest of a surgeon who does not suggest any certainty of cure or remedy [in order to prove that an acknowledged disability is not remediable and thereby qualify for benefits under the Social Security Act]?" Ratliff v. Celebrezze, 338 F.2d 978, 981 (6 Cir. 1964).

The facts in the Ratliff case are strikingly similar to those in the instant proceeding. There, as here, the disability claimant was engaged in employment involving heavy physical labor when he suffered an injury to his back which necessitated extended medical treatment and the termination of the job at which he was employed when the injury occurred. As in this case, it was suggested to the claimant that he submit to a

spinal fusion. Ratliff objected to this operation on the grounds both that he could not afford the cost of the medical services which would be necessary and that the surgeon who suggested the operation was unwilling to advise him that the operation could with reasonable certainty be expected to rehabilitate him to the extent that he could return to his former employment. In reversing the hearing examiner's determination that Ratliff's back disability was remediable, the Sixth Circuit stressed the fact that the claimant's objections to the suggested lumbosacral fusion were reasonable.[2] We think that in this case a reasonable basis for Purdham's failure to act upon Dr. Fahey's surgical recommendation has been established.

Counsel for the Secretary cites to us several decisions in support of his assertion that Purdham's condition was properly regarded as a remediable one, among them Ward v. Celebrezze, 311 F. 2d 115 (5 Cir. 1962); our decision in Bradey v. Ribicoff, 298 F.2d 855 (1962); and Remington v. Folsom, 157 F.Supp. 473 (N.D.N.Y.1957). In our judgment, all of these cases are distinguishable on their facts. In the Ward case, the examiner's decision stated that the medical evidence clearly and unequivocally showed that surgery to treat a ruptured disc would substantially improve the claimant's ability to work, and the Fifth Circuit held that the record supported this finding. In Bradey, the implication is abundantly clear not only that the medical procedures suggested could reasonably be expected in large measure to remedy the claimant's bladder ailment but also that they were relatively simple (even though perhaps temporarily painful). In the Remington case, the Secretary's representative and the district judge were in agreement, from a review of the medical evidence, that "a spine fusion operation had [a] good chance to remedy to a great extent the disability." 157 F.Supp. at 474. We do not agree with counsel for the Secretary that Dr. Fahey's language can reasonably be construed as a representation that spinal fusion for Purdham had a "good chance to remedy to a great extent the disability." As we have heretofore pointed out, Dr. Fahey's spinal fusion recommendation was conditioned upon the absence of any discogenic disease in the claimant's spinal column, a condition which we think is subject to severe question on this record.

■■ As for the claimant's stomach difficulty, we note, as did the district judge, only that there is merely a suggestion, without any medical evidence whatsover to support it, that it is remediable by surgery. However, the effect of this condition, when considered in conjunction with the spinal disability, was in late 1962, in the words of his regular treating physician, Dr. Borssuck, to rule out employment requiring even moderate lifting and strain. We also observe that all the employment which the examiner and the district judge ruled that Purdham was still capable of performing presupposed his having agreed to the recommended vertebrae fusion and that such an operation would be successful. Since we have already stated that on this record Purdham's condition may not reasonably be classified as one requiring him to submit to the spinal fusion operation in order to qualify for disability benefits, it logically follows that not even the jobs enumerated in the opinion of the court below can reasonably be considered available to and capable of being performed by the claimant.

Upon the record in this case, considered as a whole, we think that Purdham was disabled, as that word is used in the Social Security Act, at least as of the time that his present application

---

2. The Sixth Circuit in Ratliff also declared: "It is common knowledge that spinal-fusion operations are often dangerous and entail much pain and suffering." 338 F.2d at 981.

and insured status expired. The judgment of the district court is therefore vacated, and the case is remanded for the entry of an order awarding the claimant disability benefits from March 18, 1962.

Vacated and remanded.