**Edward Lee BLANKENSHIP, Plaintiff-Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 77–1536.**

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1979.

Decided May 22, 1979.

Dan Rowland, Prestonsburg, Ky., for plaintiff-appellant.

Patrick H. Molloy, U. S. Atty., Lexington, Ky., for defendant-appellee.

Before EDWARDS, Chief Judge, LIVELY, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Edward Lee Blankenship appeals from the judgment of the district court affirming the denial of his application for disability benefits under the Social Security Act.

I

Appellee filed an application for benefits on June 4, 1968, alleging total and permanent disability resulting from a back injury sustained on January 2, 1967, at Prestonsburg, Kentucky. There is no dispute between the parties that appellant is suffering from a herniated disc.

On April 11, 1969, a hearing examiner found that appellant was suffering from a disabling accident but recommended denial of his claim for benefits on the ground that appellant refused, without justifiable cause, to undergo surgery. The hearing examiner relied on 20 C.F.R. § 404.1507, which provides:

> "An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months. However, an individual who willfully fails to follow such prescribed treatment cannot by virtue of such failure be found to be under a disability. Willful failure does not exist if there is justifiable cause for failure to follow such treatment."

The conclusions of the Hearing Examiner became the final decision of the Secretary and was affirmed by the district court. On the first appeal, this court entered the following order under date of February 26, 1974:

> Upon consideration, it is ORDERED that the judgment be, and it hereby is vacated and the cause is remanded to the district court with instructions to remand it to the Secretary to conduct a further hearing and to make specific findings concerning the following questions: (1) When did claimant become disabled; (2)

Is his disability the result of a herniated disc; (3) Is surgery medically recommended for correction of his impairment and what is the prognosis for his return to gainful employment following the operation; (4) Is his refusal to submit to surgery (if maintained) based on justifiable cause.

■ Upon remand, the matter was referred to an Administrative Law Judge, who again determined that appellant was not entitled to benefits under the Act. This conclusion was adopted by the Appeals Council and became the final decision of the Secretary. The Administrative Law Judge found that appellant last met the special earnings requirement on March 31, 1973; that he was suffering from a degenerative disc disease of the lower three lumbar vertebrae together with nerve root irritation; and that his impairment was of sufficient severity to have precluded appellant from performing any of his previous work; from engaging in strenuous physical activity; or undertaking any work involving repeated stooping, bending or squatting. The Administrative Law Judge nevertheless found that appellant remained capable of performing various light and sedentary jobs which exist in the national economy. Accordingly, the recommended answer of the Administrative Law Judge to the first question set forth in this court's remand order was: "The claimant is not disabled." This response was adopted by the Appeals Council.

The district court disagreed with this finding, holding that there was not substantial evidence to support the determination that appellant was physically able to hold jobs involving light work.

We agree with the district court that the findings of the Secretary on the question of appellant's ability to hold light and sedentary jobs, which are available in the national economy, is not supported by substantial evidence. The record conclusively establishes that the correct answer to the first question propounded by this court is that appellant *is* disabled within the meaning of the Social Security Act. We, therefore, agree with this part of the decision of the district court.

## II

■ In response to the other questions propounded by this court in our remand order, the Administrative Law Judge found that the limitations preventing appellant from performing his usual occupation are the result of a herniated disc, that surgery was recommended for the correction of this impairment, and that if appellant accepted surgery when recommended in 1968, the prognosis indicated that he would have been able to return to his usual work, probably within a period of not more than three months. The Administrative Law Judge concluded that appellant's refusal to submit to such surgery was not based upon justifiable cause.

The district court affirmed the decision of the Secretary on the ground that there was substantial evidence to support the finding that appellant had no justifiable cause to refuse to submit to surgery in 1968.

We reverse on the ground that appellant's refusal to undergo spine surgery was based on justifiable cause.

The record demonstrates beyond doubt that surgery was not recommended for appellant in 1974. On November 15, 1974, Dr. Herbert Knodt made the following diagnosis after two examinations of appellant:

X-ray examination of the lumbar and sacral portion of the spine showed disc space narrowing beginning at L–3–L–4, extending all the way down to the sacrum with most pronounced narrowing at L–5.

Mr. Blankenship had a low back injury in 1967, and has been hospitalized on several occasions. He had no surgery. Surgical treatment in my opinion is out of the question because of the extensive involvement of the lumbar spine on X-rays and the impossibility to immobilize all the segments by spinal fusion.

I consider Mr. Blankenship permanently and totally disabled and not in a position to return to gainful employment as the result of his injury.

There is some medical testimony in the record which favored surgery in 1968, but such testimony at best is inconclusive.

On August 19, 1968, Dr. Joseph Keith expressed the view that if appellant had a "true disc" and was operated upon, he should be able to be back to work in about a month after surgery. No determination was made as to the severity and extent of the disc injury.

Dr. Frederick William Elder, Jr. was less optimistic. In a letter dated November 11, 1968, he said:

> I *believe* that he *probably* could be helped by undergoing a laminectomy. *Under the present circumstances, I would judge that the prognosis would be guarded.* (Emphasis added.)

Dr. Thomas J. Holbrook, while testifying at the hearing on remand, stated:

> Q  O.K., let me ask you this; could the operation be successful and still not restore the patient to his former condition, or his former physical abilities?
>
> A  Well, I mean to be successful in general terms, but I don't believe that anyone who has a ruptured disc and been operated upon is the same as they were before they had these problems.

Appellant, in testimony at the remand hearing, gave the following explanation of his reasons for refusing to consent to an operation on his spine:

Q  Were you able to work when you had your social security hearing in 1969?

A  No.

Q  Are you you able to work now?

A  No, I'm not.

Q  Exactly, what bothers you?

A  It's my back, my right leg, my right side up to my neck and head.

Q  Tell me how they affect you and what problems you have?

A  When I sit very long, my back just about kills me, and when I stoop, it hurts, and when I twist it, it just busts my head open, it hurts my neck.

Q  Has that continued since you've stopped working?

A  Yes, it has.

Q  Has the condition been continual, are you bothered each day?

A  Every day; seems to get worse.

Concerning his fear of surgery and its results, he stated:

Q  Well, tell us what decisions you and he (Dr. Elder) had about surgery?

A  Well, I asked him about the surgery. I asked him what kind of chances I have and he said, "you've got a fifty-fifty chance, but you may never walk again, and it could hit you if you walked across the street."

Q  Now, he said that you had a fifty-fifty chance if you took the operation and if you didn't, what would hit you if you walked across the street?

A  That I would be paralyzed.

\*  \*  \*  \*  \*  \*

Q  And if you did submit to an operation, he told you that you had a fifty-fifty chance is that right?

A  Right.

Q  Did he encourage you to take the operation?

A  No, he didn't.

Q  But he mentioned if [sic] often, is that correct?

A  Right.

Q  Did he finally tell you that there was nothing further that he could do for you?

A  Yes, he did.

Q  At that time, did he recommend that you have surgery?

A  No, he didn't.

Q  Was surgery talked about most of the times that you and he—(interrupted).

A  One time.

Q  Is that right? Did he say that he felt that you ought to have the surgery, or that he wanted to do the surgery on you, just exactly what did he say, if you can remember?

A  He didn't say that he wanted to.

Q  Well, did he say that was the only chance that you had of recovering?

A  No, he didn't.

Q  What did he say?

A  He just said that it may hit me any time walking across the street; that I

had a fifty-fifty chance; that I'd never walk again if I took one. I told him that I was walking right now, and I believed that it would be better to wait until it paralyzed me.

Q Why did you not submit to an operation if you had a chance of improving the condition of your back?

A He wasn't guaranteeing it. He didn't say it would improve my back. He said it could or it couldn't.

Q Did you think that an operation might improve your back condition?

A No, I didn't. I've seen other guys had it and it didn't even help those guys, and those guys are disabled now.

Q Are you talking about people who actually had back operations?

A I am.

Q Can you name some of those people?

A Yes, Herskel Hamilton, Lee Hamilton, and Hezzie Jones, and Willie Hamilton, and those guys I've seen in the hospital, which I don't know at this time.

Q And you feel that their surgery was unsuccessful, is that right?

A I do.

Q Based on what you know about back surgery and what you feel about your chances for recovery, were you afraid to take the operation?

A I am not afraid to take the operation; what I'm afraid of what is will happen after the operation.

Q Well, tell me exactly what you mean?

A I could be paralyzed, don't walk again, I wouldn't be with my family. If I did get the operation, I want my family right with me.

Q Now, why do you want your family there with you if you had an operation?

A Just in case I wouldn't be walking or get over the operation.

Q I see. Are you afraid to be alone during an operation of this type?

A Yes, I am.

Q What else concerns you about that type of an operation?

A I feel like if it paralyzed me, I wouldn't ever walk again and be with my family. As far as it is now, I can't even lift one of my children, I can't even play with them, no way, no how.

The above-quoted regulation relied upon by the secretary, 20 C.F.R. § 404.1507, expressly states that "[w]illful failure does not exist if there is justifiable cause for failure to follow such treatment." We disagree with the conclusion of the Secretary that appellant did not establish justifiable cause for his refusal to submit to a spinal operation. We hold that the conclusion of the Secretary on this issue is not supported by substantial evidence.

The brief filed on behalf of the Secretary asserts that appellant refused to undergo surgery because the doctor did not give assurance of a 90 per cent chance for a successful operation, and that appellant's demand of a 90 per cent assurance of success was unreasonable. The record does not support the assertion that appellant demanded a 90 per cent assurance.

Appellant was asked whether he would be willing to submit to an operation if a doctor told him that he would have a 90 per cent chance of being well again, and he answered affirmatively. This does not support the proposition that appellant demanded a 90 per cent assurance of surgical success. The record indicates that the best assurance appellant ever received from any doctor was a 50 to 60 per cent chance of success, with a very substantial chance for failure. It seems significant to this court that appellant, on at least two occasions, was willing to undergo a myelogram which involved some risk and considerable pain.

The facts of the present case are similar to those presented in *Ratliff v. Celebrezze,* 338 F.2d 978 (6th Cir. 1964), involving a Social Security applicant suffering from an injury to his lower lumbar vertebrae. The Secretary denied the claim because of the refusal of claimant to agree to undergo an operation, relying upon the above-quoted regulation (20 C.F.R. § 404.1507). In remanding the case with direction to allow disability benefits, this court said:

It is common knowledge that spinal-fusion operations are often dangerous and entail much pain and suffering. What kind of surgical operation entailing what danger to life, and pain, must an applicant undergo at the behest of a surgeon who does not suggest any certainty of cure or remedy? See *Jarvis v. Ribicoff,* 312 F.2d 707 (C.A.6).

338 F.2d at 981. The Fourth Circuit held to the same effect in *Purdham v. Celebrezze,* 349 F.2d 828, 830 (4th Cir. 1965).

The record establishes conclusively that an operation was not recommended for appellant at the time of the hearing on remand. The finding of the Secretary that appellant would have been able to return to work if he had submitted to an operation on his spine in 1968 is, at best, speculative.

The judgment of the district court is reversed. The case is remanded with instructions to allow disability benefits.